IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>                  Plaintiff,<br><br>       v.<br><br>RYAN ZINKE, et al.,<br><br>                  Defendants. | Case No. 3:18-cv-00064-SLG |

**ORDER RE MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD**

Before the Court at Docket 17 is Plaintiff Center for Biological Diversity's ("CBD") Motion to Compel Completion of the Administrative Record Pursuant to Local Rule 16.3. Defendants filed their Opposition at Docket 20, to which Plaintiff replied at Docket 23. Oral argument was not requested and was not necessary to the Court's determination.

**BACKGROUND**

On March 8, 2018, CBD filed a complaint "challeng[ing] the decision of the U.S. Fish and Wildlife Service [("FWS")] that the Pacific walrus does not warrant listing as a threatened or endangered species under the Endangered Species Act ('ESA')."[1] On July 9, 2018, Defendants filed a Notice of Filing the Administrative Record pursuant to the Court's scheduling order.[2] On August 6, 2018, CBD filed the instant motion seeking to

---

[1] Docket 1 (Complaint) at 2, ¶ 1 (citing 16 U.S.C. §§ 1531–44; 82 Fed. Reg. 46,618 (Oct. 5, 2017)).

[2] *See generally* Docket 14 (Notice of Filing the Administrative Record); *see also* Docket 13

supplement the administrative record and require Defendants to produce a privilege log.[3] CBD's motion seeks inclusion in the administrative record of three categories of documents: (1) comments and studies submitted in advance of a previous FWS listing decision, in 2011, relating to the Pacific walrus; (2) 2017 listing decision-related documents that had previously been released under FOIA; and (3) internal and external communications relating to the listing decision.[4] Defendants noted in their opposition that they agree to supplement the record with the first category of documents—comments and studies submitted prior to the 2011 listing decision—as well as more recent studies.[5]

## LEGAL STANDARD

### I. Completeness of the Record

When reviewing agency action under § 706 of the Administrative Procedure Act ("APA"), "the court shall review the whole record or such portions thereof as may be cited by any party . . . ."[6] "The 'whole' administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position."[7] "'The whole record' includes

---

(Scheduling Order) at 1.

[3] *See* Docket 17 at 7.

[4] *See* Docket 17 at 11–13 (characterizing the documents as consisting of two categories: "public comments and scientific studies" and "internal and external communications"); Docket 23 at 5–6 (characterizing the documents as consisting of the three categories described above).

[5] *See* Docket 20 at 8–10. Defendants also stated that when they submitted their opposition, they were in the process of "re-examining the record." Docket 20 at 8.

[6] 5 U.S.C. § 706.

[7] *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex.1981)).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 2 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 2 of 17

everything that was before the agency pertaining to the merits of its decision."[8] "An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'"[9] "A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors."[10]

"An agency's designation and certification of the administrative record is entitled to a 'presumption of administrative regularity,'"[11] which "requires courts to presume that public officials have discharged properly their official duties."[12] "[T]o rebut the presumption of regularity, plaintiffs 'must put forth concrete evidence' to show that the record is incomplete."[13] "Plaintiffs cannot meet their burden 'simply by asserting that the documents are relevant, were before or in front of the [agency] at the time it made its decision, and were inadequately considered[.]'"[14] "[I]nstead, plaintiffs 'must identify

---

[8] *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (quoting *Thompson*, 885 F.2d at 555–56).

[9] *Id.* (quoting *Home Box Office, Inc. v. Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C. Cir.1977)).

[10] *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980).

[11] *Golden Gate Salmon Ass'n v. Ross,* No. 1:17-CV-01172 LJO-EPG, 2018 WL 3129849, at *4 (E.D. Cal. June 22, 2018) (quoting *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007)).

[12] *Id.* (citing *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007)).

[13] *Id.* (quoting *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)).

[14] *Id.* (quoting *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 3 of 17

Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 3 of 17

reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record.'"[15]

## II. Whether Deliberative Documents Are Part of the Record

The Ninth Circuit has "not previously addressed whether assertedly deliberative documents must be logged and examined or whether the government may exclude them from the administrative record altogether."[16]

---

[15] *Id.* (quoting *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6).

[16] *In re United States*, 875 F.3d 1200, 1210 (9th Cir.), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 443 (2017) (finding that district court had not committed clear error by "requir[ing] a privilege log and evaluat[ing] claims of privilege on an individual basis before including documents in the record . . . ."). The U.S. Supreme Court, in vacating the judgment, did "not suggest any view on the merits of respondents' claims or the Government's defenses . . . ." *In re United States*, 138 S. Ct. 443, 445 (2017). However, the Supreme Court did note that "[t]he Government makes serious arguments that at least portions of the District Court's order are overly broad." *Id.* The district court order had "require[d] the Government to turn over all 'emails, letters, memoranda, notes, media items, opinions and other materials' that fall within the following categories:[]'(1) all materials actually seen or considered, however briefly, by Acting Secretary [Elaine] Duke in connection with the potential or actual decision to rescind DACA . . ., (2) all DACA-related materials considered by persons (anywhere in the government) who thereafter provided Acting Secretary Duke with written advice or input regarding the actual or potential rescission of DACA, (3) all DACA-related materials considered by persons (anywhere in the government) who thereafter provided Acting Secretary Duke with verbal input regarding the actual or potential rescission of DACA, (4) all comments and questions propounded by Acting Secretary Duke to advisors or subordinates or others regarding the actual or potential rescission of DACA and their responses, and (5) all materials directly or indirectly considered by former Secretary of DHS John Kelly leading to his February 2017 memorandum not to rescind DACA.'" *Id.* at 444–45 (quoting *Regents of Univ. of California v. United States Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017)). The district court order had rejected plaintiffs' request "that defendants scour the Department of Justice and the White House for documents for inclusion in the administrative record . . . except to the limited extent that DOJ or White House personnel fall within the category described . . . above as someone who gave verbal or written input to the Acting Secretary. Nor do defendants have to search for DACA materials below the agency levels indicated in the first paragraph above. These are intended as practical limits on what would otherwise be a bone-crushing expedition to locate needles in haystacks." *Regents*, 2017 WL 4642324, at *8.

The Ninth Circuit has also, in an unpublished opinion, denied a "motion to supplement, along with the accompanying motion to require preparation of a privilege log," because the agency "denie[d] that it [had] considered the documents at issue, and [the plaintiff had] not presented

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 4 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 4 of 17

A split of authority exists on this issue, including among the district courts of this Circuit. The D.C. Circuit has held that "[a]gency deliberations not part of the record are deemed immaterial."[17] The Circuit Court reasoned "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior."[18] In *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Commission*, the D.C. Circuit rejected the plaintiffs' request "to supplement the record to consider transcripts of a closed meeting of the Nuclear Regulatory Commission."[19] The court determined that "[j]udicial examination of these transcripts would represent an extraordinary intrusion into the realm of the agency. These transcripts record the frank deliberations of Commission members engaged in the collective mental processes of the agency."[20]

The D.C. District Court has elaborated on this reasoning. It held in *Oceana, Inc. v. Pritzker* that "[t]he presumed exemption from the administrative record of deliberative

---

clear evidence that the [agency had] consider[ed] those documents." *Cook Inletkeeper v. U.S. E.P.A.*, 400 F. App'x 239, 240 (9th Cir. 2010).

[17] *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) (citing *Camp v. Pitts*, 411 U.S. 138 (1973); *United States v. Morgan*, 313 U.S. 409 (1941)).

[18] *Id.* at 1279–80 (citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 457–58 (D.C. Cir.1994); *Overton Park*, 401 U.S. at 420).

[19] *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986).

[20] *Id.* The Ninth Circuit in *In re United States* distinguished *Mothers for Peace* from cases involving a single agency head: "Where—as in *Mothers for Peace*—an agency is headed by a multi-member board, the deliberations among those members are analogous to the internal mental processes of the sole head of an agency, and thus are generally not within the scope of the administrative record. No such deliberations among a multi-member agency are at issue here." *In re United States*, 875 F.3d at 1210 (citing *Portland Audubon Soc'y*, 984 F.2d at 1549).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 5 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 5 of 17

process materials makes good sense. The deliberative process privilege is aimed at 'enhanc[ing] the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'"[21] The *Oceana* court also expressed its concern that requiring agencies to develop a privilege log would "transform the process of judicial review of administration decisions" and burden agencies with FOIA-like discovery.[22]

The Central District of California in *ASSE International, Inc. v. Kerry*, taking note of "the great weight of cases from the D.C. Circuit honoring the Government's determination of what documents are privileged absent a rebuttal of the presumption of regularity," determined that "the documents over which Defendants claim privilege are not part of the administrative record and Defendants are not required to produce a privilege log for those documents."[23]

Similarly, the Eastern District of California in *Golden Gate Salmon Association v. Ross* "declin[ed] to require [that] deliberative materials be included in an administrative record as a matter of course because doing so contravenes 'the standard presumption that the agency properly designated the Administrative Record.'"[24] However, the *Golden*

---

[21] *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 319 (D.D.C. 2016) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)).

[22] *Id.* at 320 (internal quotation marks omitted) (quoting *Blue Ocean Institute, et al. v. Gutierrez et al.*, 503 F.Supp.2d 366, 371 (D.D.C. 2007)).

[23] *ASSE Int'l, Inc. v. Kerry*, No. SACV 14-00534-CJC(JPRx), 2018 WL 3326687, at *4 (C.D. Cal. Jan. 3, 2018).

[24] *Golden Gate Salmon*, 2018 WL 3129849, at *5 (emphasis omitted) (quoting *San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-CV-01290 LJO GSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016)).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 6 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 6 of 17

*Gate Salmon* court did grant in part plaintiffs' motion to supplement the administrative record as to those documents where the plaintiffs had provided "clear evidence" that a deliberative process privilege was not warranted.[25]

In contrast, the Northern District of California has stated that "[t]here can be no doubt that under some circumstances, pre-decisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law under Section 706(2) of the APA."[26] "Therefore, the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the universe of materials directly or indirectly considered by agency decision-makers."[27] "[T]he scope of the [deliberative process] privilege doesn't define the scope of the material directly or indirectly considered. If a privilege applies, the proper strategy isn't pretending the protected material wasn't

---

[25] *Id.* at *5–7, *9–13 (granting plaintiffs' motion as to certain predecisional meeting notes and comment letter; but denying it as to comments and other materials that predated the agency's consideration of the project at issue, to categories of documents for which plaintiffs had made vague assertions, to deliberative emails sent by a government official whom the agency had deemed not crucial to the decisionmaking process, and to other deliberative communications).

[26] *Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 382 (N.D. Cal. 2017).

[27] *Inst. for Fisheries Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 7 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 7 of 17

considered, but withholding or redacting the protected material and then logging the privilege."[28] The Districts of Montana[29] and Utah[30] have reached a similar conclusion.

D.C. courts have held that courts should not consider those communications that were entirely within the agency.[31] The Ninth Circuit has suggested it agrees with such an approach.[32] The Court finds persuasive the D.C. Circuit's reasoning that "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless

---

[28] *Id.*

[29] *See Indigenous Envtl. Network v. United States Dep't of State*, No. CV-17-29-GF-BMM, 2018 WL 1796217, at *2–3 (D. Mont. Apr. 16, 2018) (internal quotation marks omitted) (ordering Department of State and FWS to produce internal agency communications and drafts, stating these documents "are part of the universe of material directly or indirectly considered by agency decision-makers").

[30] *See Pitman v. United States Citizenship & Immigration Servs.*, No. 2:17-CV-00166-CW-EJF, 2018 WL 3232355, at *3 (D. Utah July 2, 2018) ("The USCIS Defendants have not pointed to any binding authority in the Tenth Circuit holding that the administrative record does not include privileged documents. Therefore, consistent with other courts facing similar circumstances, the Court declines to follow the district court cases from the Districts of Columbia and Virginia and hold that privileged documents do not form part of the administrative record and therefore not require a privilege log in APA cases.").

[31] *See Mothers for Peace*, 789 F.2d at 44 (noting that "the frank deliberations of [Nuclear Regulatory] Commission members" constituted part of "the collective mental processes of the agency"); *Stand Up for California! v. United States Dep't of Interior*, 71 F. Supp. 3d 109, 122 (D.D.C. 2014) (quoting *In re Subpoena Duces Tecum*, 156 F.3d at 1279–80) ("[P]rivileged and deliberative documents reflecting internal agency deliberations are 'immaterial as a matter of law—unless there is a showing of bad faith or improper behavior . . . .'"). The D.C. Circuit has similarly singled out intra-agency communications for protection in the context of the deliberative process privilege. *See Checkosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994) (quoting *Kansas State Network, Inc. v. FCC*, 720 F.2d 185, 191 (D.C. Cir. 1983)), *superseded on other grounds as recognized by Marrie v. SEC*, 374 F.3d 1196 (D.C. Cir. 2004) ("In passing on final agency action, we therefore have refused to consider transcripts of closed agency meetings or 'intra-agency memoranda and documents recording the deliberative process leading to' the agency's decision.").

[32] *See Portland Audubon Soc'y*, 984 F.2d at 1549 (distinguishing unprotected materials in that case from "the internal deliberative processes of the agency [and from] the mental processes of individual agency members").

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 8 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 8 of 17

there is a showing of bad faith or improper behavior."³³ "Just as a judge cannot be subjected to . . . scrutiny [over which documents the judge considers in making decisions and the weight that the judge gives each document], . . . so the integrity of the administrative process must be equally respected."³⁴ The Ninth Circuit has recognized that the deliberative process privilege benefits the public insofar as it "allow[s] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."³⁵ But the privilege extends only to those communications entirely within the particular agency. When an agency obtains and considers materials from outside of that agency, or shares the agency's documents with others outside the agency, including other governmental agencies, the deliberative process privilege does not apply. All such materials should be included within the administrative record.

## DISCUSSION

**I. Scope of the Dispute**

Plaintiff's motion refers to a number of documents that it seeks to have included in

---

[33] *In re Subpoena Duces Tecum*, 156 F.3d at 1279–80 (citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 457–58 (D.C.Cir.1994); *Overton Park*, 401 U.S. at 420).

[34] *United States v. Morgan*, 313 U.S. 409, 422 (1941) (internal citation omitted) (holding that the Secretary of Agriculture should not have been ordered to testify "regarding the process by which he reached the conclusions of his [stockyard market rate-setting] order, including the manner and extent of his study of the record and his consultation with subordinates"). The Court also stated: "It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id.* (citation omitted).

[35] *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.1992)).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 9 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 9 of 17

the administrative record.[36] In their opposition, Defendants indicated they had agreed to supplement the administrative record with the following documents:

- Comments from CBD to FWS on the agency's 90-day finding that listing the Pacific walrus may be warranted submitted on November 9, 2009 [Exhibit 1 (Docket 18-1 at 2–30)];
- Comments from CBD to FWS to inform its status review of the Pacific walrus submitted in 2010 [Exhibit 3 (Docket 18-3 at 2-14)];
- Comments from the Marine Mammal Commission to FWS regarding whether to list the Pacific walrus submitted on January 1, 2011 [Exhibit 6 (Docket 18-6)];
- Scientific studies and other documents referenced in the FWS's 2009 comment letter, copies of which were submitted to the agency along with the comment letter [Exhibits 1 and 1-A (Docket 18-1 at 31–41)];
- Scientific studies and other documents referenced in FWS's 2010 comment letter, copies of which were submitted to the agency along with the comment letter [Exhibit 3 (Docket 18-3 at 15–19)];
- Scientific studies and other documents referenced in FWS's comment letter submitted on December 21, 2016, copies of which were submitted to the agency along with the comment letter [Exhibit 7 (Docket 18-7); PW0000254–58];
- Studies referenced in FWS's comment letter submitted on July 28, 2017, copies of which were submitted to the agency along with the comment letter [Exhibit 8 (Docket 18-8); PW0000731]; and
- A study entitled: Taylor, Rebecca L. et al., Demography of the Pacific walrus (*Odobenus rosmarus divergens*) in a changing Arctic, Marie [sic] Mammal Science, first published: 02 September 2017 [Exhibit 9 (Docket 18-9)].[37]

---

[36] Docket 17 at 12–13; *see also* Docket 20 at 8–9.

[37] Docket 17 at 12 (internal citation omitted); *see also* Docket 20 at 8–9; Docket 21 (Declaration of Patrick Lemons) at 1–5, ¶¶ 3–14 ("The documents that Center for Biological Diversity has requested (the 2009 comments, 2010 comments, and studies cited in those comments) were directly or indirectly considered but not included in the Final Species Status Assessment or the 2017 12-month finding because the FWS determined that the documents were not the best available scientific or commercial information available. For example, some of the documents were not the best available scientific or commercial information because more recent studies had been completed on the issues presented in previous work. Only the best available scientific and commercial information was used in the 2017 12-month finding and Final Species Status Assessment.").

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 10 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 10 of 17

The following documents remain in dispute:

- Peer reviewers' comments on FWS's draft status assessment [Exhibit 10 (Docket 18-10)];
- Comments from the Marine Mammal Commission on FWS's draft status assessment [Exhibit 12 (Docket 18-12)];
- Comments from the U.S. Geological Survey on FWS's draft status assessment [Exhibit 11 (Docket 18-11)];
- Notes from meetings of the team FWS assembled to recommend whether it should list the walrus;
- Drafts of FWS's status assessment and decision documents [Exhibit 14 (Docket 18-14)]; and
- Emails and other internal and external communications relating to the listing of the Pacific walrus.[38]

## II. Analysis of Each Document or Category of Documents

### A. Exhibit 10

Exhibit 10 is titled "PEER REVIEW: DRAFT SPECIES STATUS ASSESSMENT FOR THE PACIFIC WALRUS (*Odobenus rosmarus divergens*) December 2016 (Version 3.0)."[39] CBD argues that it "has done more than imply that the records at issue[, including Exhibit 10,] were in the agency's possession; it has actually obtained them from the agency in the course of a FOIA request."[40] However, "[a]n agency's possession of certain records, as confirmed by their disclosure in response to a FOIA request, is not sufficient to show that the same records were considered by the agency in connection with a decision subject to an APA challenge . . . ."[41]

---

[38] Docket 17 at 13; *see also* Docket 20 at 9–10. This bullet point appears to include Exhibit 13, which CBD describes as "a summary report of peer review comments on the draft status assessment . . . ." Docket 17 at 26 (citing Docket 18-13 (Exhibit 13)).

[39] Docket 18-10 at 2.

[40] Docket 23 at 10 (internal citations and quotation marks omitted).

[41] *Stand Up for California!*, 71 F. Supp. 3d at 117; *see also Pac. Shores Subdivision*, 448 F. Supp. 2d at 6–7 ("Although Plaintiffs imply that the Corps possessed some of the documents

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 11 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 11 of 17

Patrick Lemons—the FWS person "ultimately responsible for determining which publications and documents were relevant and constituted the best available science for consideration in [FWS's Pacific walrus listing] decision making process in 2017"[42]—states in his declaration that "FWS sent the technical sections from the Draft Species Status Assessment to [six] subject matter[] experts and the Final Species Status Assessment to three anonymous reviewers for independent third party review, in part, to ensure that FWS had incorporated the best available scientific and commercial data."[43] Exhibit 10 appears to be one of the three anonymous and independent third party peer reviews. Defendants provide no support for their allegation that "peer review comments on FWS's draft status assessment" are deliberative.[44] Including these comments in the administrative record would not undermine the public's interest in "allow[ing] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."[45] And CBD has "identif[ied] reasonable, non-speculative grounds for [its] belief that [this] document[ was] considered by the agency and not included in the

---

because Plaintiffs obtained them through a Freedom of Information Act request, see Pls' Mot. at 4, there is no evidence that the Corps' decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include."); *see also TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd sub nom. TOMAC, Taxpayers of Michigan Against Casinos v. Norton*, 433 F.3d 852 (D.C. Cir. 2006) (holding party seeking to supplement with FOIA materials "confused the administrative record—the record the agency relied upon in its final action—with FOIA's emphasis on every scrap of paper that could or might have been created.").

[42] Docket 21 at 1.

[43] Docket 21 at 4.

[44] Docket 20 at 18.

[45] *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.1992)).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 12 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 12 of 17

record.'"[46]  Based on the foregoing, the Court will grant CBD's motion to supplement as to Exhibit 10.

   *B. Exhibit 12*

Exhibit 12 is the Marine Mammal Commission's "review [of the] the Draft Species Status Assessment (SSA) of the Pacific Walrus . . . ."[47]  This communication from the Marine Mammal Commission does not reveal of "the collective mental processes of the [FWS] agency."[48]  Rather, it is commentary from an independent government agency established under the Marine Mammal Protection Act.[49]  Based on the foregoing, the Court will grant CBD's motion to supplement as to Exhibit 12.

   *C. Exhibit 11*

Exhibit 11 is a memorandum from the U.S. Geological Survey to FWS's Dr. James G. MacCracken.[50]  Its subject matter is "USGS review of the USFWS Draft Species Status Assessment of the Pacific Walrus."[51]  Dr. MacCracken is the lead author of FWS's May 2017 Final Species Status Assessment for the Pacific Walrus.[52]  For much the same

---

[46] *Golden Gate Salmon*, 2018 WL 3129849, at *4 (quoting *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6).

[47] Docket 18-12 at 2.

[48] *Mothers for Peace*, 789 F.2d at 44.

[49] 16 U.S.C. §§ 1361, 1401.

[50] *See* Docket 18-11 at 2.

[51] Docket 18-11 at 2.

[52] *See* Docket 21-2 (Final Species Status Assessment for the Pacific Walrus (*Odobenus rosmarus divergens*)) at 1.

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 13 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 13 of 17

reasoning that the Court will grant CBD's motion as to Exhibit 12, the Court will grant CBD's motion as to Exhibit 11.

  D. "*Notes from meetings of the team the Service assembled to recommend whether it should list the walrus[.]*"[53]

CBD notes in its motion that "a document in the record refers to a meeting of the 'listing decision team,' but the record contains no notes, minutes, or transcripts from that meeting."[54] Defendants argue that CBD's request is "pure speculation as [CBD] does not even know whether such documents exist."[55] Documents regarding meetings attended solely by FWS personnel would constitute "the collective mental processes of the agency" and do not need to be included in the administrative record.[56] But documents regarding meetings that were attended by individuals outside of FWS (even if FWS were also at the meetings) are not protected by the deliberative process privilege. Accordingly, the Court will grant CBD's motion on this topic as follows: the record shall be supplemented with all documents related to meetings regarding the listing decision at which any person outside of the FWS was in attendance.

  E. Exhibit 14 and Other Drafts

Exhibit 14 is a two-paragraph document with the heading, "Draft Pacific Walrus Status Assessment."[57] CBD identifies it as a "copy of Version 1.1 of the Executive

---

[53] Docket 17 at 13.

[54] Docket 17 at 25–26 (quoting PW0000387).

[55] Docket 20 at 18.

[56] *Mothers for Peace*, 789 F.2d at 44.

[57] Docket 18-14 at 2.

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 14 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 14 of 17

Summary from the U.S. Fish and Wildlife Service's Species Status Assessment for the Pacific Walrus dated September 2016."[58] FWS evidently shared earlier versions of the Species Status Assessment with other entities.[59] Therefore, Exhibit 14 is not an internal FWS document; rather, it appears to be a building block of an external communication. Therefore, the Court will grant CBD's motion to supplement on this topics as follows: Defendants shall supplement the record to include any and all drafts of Pacific Walrus Status Assessments and decision documents that were shared with individuals outside of the FWS for comment or otherwise.

> F. *"Emails and other internal and external communications relating to the listing of the Pacific walrus,"*[60] *including Exhibit 13* [61]

Exhibit 13 is titled, "Summary Report of Independent Peer Reviews of *U.S. Fish and Wildlife Service Draft Species Status Assessment for the Pacific Walrus (Odobenus rosmarus divergens).*"[62] The document is dated June 2017.[63] The forward states that "Atkins North America (Atkins), was retained by the U.S. Fish and Wildlife Service (Service) to facilitate an independent scientific review of the Draft Species Status

---

[58] Docket 18 (Declaration of Kristen Monsell) at 4.

[59] *See* Docket 18-10 (Exhibit 10) at 2.

[60] Docket 17 at 13; *see also* Docket 20 at 9–10; Docket 18-10 (Exhibit 10); Docket 18-11 (Exhibit 11); Docket 18-12 (Exhibit 12); Docket 18-14 (Exhibit 14).

[61] *See* Docket 17 at 26 (citing Docket 18-13 (Exhibit 13)) (referring to "a summary report of peer review comments on the draft status assessment").

[62] Docket 18-13 at 2.

[63] Docket 18-13 at 2.

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 15 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 15 of 17

Assessment . . . ."[64]  The Court will grant CBD's motion to supplement as to Exhibit 13. In addition, the Court will grant the motion as to any documents that FWS decisionmakers solicited or received from other agencies or other organizations outside FWS relating to the listing status of the Pacific walrus.

CBD also seeks to supplement the record with emails and other internal and external communications. CBD points out that "[t]he record contains only two emails, one of which consists of [an FWS] employee forwarding a copy of a letter from the [CBD] to other [FWS] employees, the other of which consists of a brief discussion regarding whether a formal response to a letter from the [CBD] is needed."[65]  CBD also points to the large swath of emails and internal communications in another listing decision.[66]  The Court will grant CBD's motion as to email exchanges and other communications as follows: Defendants shall supplement the record with all email exchanges and other communications relating to the Pacific walrus listing decision with other agencies and other organizations outside of FWS.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that CBD's Motion to Compel Completion of the Administrative Record Pursuant to Local Rule 16.3 at Docket 17 is DENIED in part and GRANTED in part as follows:

CBD's unopposed Motion as to the comments and studies at Exhibits 1 and 1-A

---

[64] Docket 18-13 at 3.

[65] Docket 17 at 11–12 (citing PW0000152; PW0000259).

[66] *See generally* Docket 18-5 (Certified List of the Administrative Record in *Alaska Oil & Gas Ass'n v. Pritzker*, No. 4:13-cv-00018-RRB (D. Alaska)).

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 16 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 16 of 17

(Docket 18-1), Exhibit 3 (Docket 18-3), Exhibit 7 (Docket 18-7), Exhibit 8 (Docket 18-8), Exhibit 9 (Docket 18-9), PW0000254–58, and PW0000731 is GRANTED.

CBD's Motion as to Exhibit 10 (Docket 18-10), Exhibit 11 (Docket 18-11), Exhibit 12 (Docket 18-12), Exhibit 13 (Docket 18-13), and Exhibit 14 (18-14) is GRANTED.

CBD's Motion to Supplement as to FWS's strictly internal documents, including FWS's records of entirely internal meetings relating to the listing of the Pacific walrus is DENIED. Defendants need not submit a privilege log for FWS's intra-agency documents relating to the listing of the Pacific walrus.

CBD's Motion as to emails and all other documents shared or received from other agencies or other organizations outside FWS relating to the listing of the Pacific walrus is GRANTED. To the extent FWS believes any such externally shared documents may be subject to a deliberative process privilege, it shall provide a privilege log with respect to each such external document.

Defendants shall fully comply with this order within 30 days.

DATED this 15th day of November, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:18-cv-00064-SLG, *Center for Biological Diversity v. Zinke, et al.*
Order re Motion to Compel Completion of the Administrative Record
Page 17 of 17
Case 3:18-cv-00064-SLG   Document 24   Filed 11/16/18   Page 17 of 17